**ORDERED ACCORDINGLY.**

**WARNICKE & LITTLER, P.L.C.**
1411 N. Third Street
Phoenix, Arizona 85004
TELEPHONE (602) 256-0400
FAX (602) 256-0345
E-MAIL: administrator@warnickelittler.com
Thomas E. Littler/SBN 006917
Robert C. Warnicke/SBN 015345
Attorneys for Rock Bottom, LLC

**Dated: November 11, 2009**



**GEORGE B. NIELSEN, JR**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | In proceedings Under Chapter 11 |
| **U. S. AMERICAN STONE AND MINERALS, INC.** | Case No. 2:07-bk-01628-GBN |
| **Debtor.** | **ORDER THAT THE DEBTOR EXECUTE ATTACHED DOCUMENTS** |

On August 24, 2009 the Court Ordered the Debtor to execute documents provided by Rock Bottom LLC ("Rock Bottom") by August 21, 2009 if the parties could agree on the form of the documents, and parties being unable to agree, upon Rock Bottom's Brief in Support of an Order that the Debtor Execute Instruments" and declaration filed on September 29, 2009, the Debtor's "Response Brief Re: Form of Rock Bottom's Loan Documents" filed on October 7, 2009, and Rock Bottom's "Reply Brief in Support of an Order that the Debtor Execute Instruments" filed on October 14, 2009, and after a hearing on October 23, 2009 at 1:00 p.m., and thereafter "Rock Bottom, LLC'S Memorandum Regarding Status of Debtor's Execution of Instruments" filed on November 5, 2009. the Debtor's "Statement of Position Re: Rock Bottom's Loan Documents" and further hearing on November 6, 2009 at 9:00 a.m., after due deliberation and sufficient cause appearing:

IT IS HEREBY ORDERED:

1.    That the Debtor's objection to the references in Rock Bottom's proposed Deed of Trust to this Court's June 22, 2007 Financing Order in paragraphs 1.8, 2.5, 4.2 and 6.4 is sustained, and these references in these paragraphs shall be removed.

2.    That the Debtor's objection to Rock Bottom's proposed language for paragraph 5.1.2 of the Deed of Trust regarding taxes is overruled, and the language shall be included in the Deed of Trust.

3.    That the Debtor's objection to Rock Bottom's proposed language for paragraph 5.1.5 of

the Deed of Trust regarding costs is overruled, the language shall be included in the Deed of Trust.

4.      That the Debtor's objection to Rock Bottom's proposed language for paragraph 6.1.2 of the Deed of Trust regarding breach is overruled, the language shall be included in the Deed of Trust.

5.      That the Debtor's objection to the Rock Bottom's proposed language in the Term Note that references this Court's June 22, 2007 Financing Order in the section entitled "Promise to Pay" is sustained, and the language shall be removed.

6.      The Debtor shall execute Note attached hereto as Exhibit 1 and return the executed original to Rock Bottom within five business days of the entry of this Order.

7.      The Debtor shall execute and have notarized the Deed of Trust attached hereto as Exhibit 2 and return the executed and notarized original to Rock Bottom within five business days of the entry of this Order.

DATED AND SIGNED ABOVE

EXHIBIT 1

# TERM NOTE

Borrower:

U.S. American Stone and Minerals, Inc.
3839 Briargrove Lane, Ste. 6207
Dallas, TX 75287-6376

Lender:

Rock Bottom, LLC
1221 McKinney St., Ste. 2650
Houston, TX 77010

Principal Amount
U.S. $555,333.89

Note Effective Date:
June 22, 2007

**PROMISE TO PAY.** U.S. American Stone and Minerals, Inc., a Nevada corporation and a Chapter 11 Debtor and Debtor in Possession (the "Borrower"), promises to pay to the order of Rock Bottom, LLC, a Delaware limited liability company ("Lender"), in lawful money of the United States of America, the sum of **Five Hundred, Fifty five thousand, three hundred and thirty three and 89/100 Dollars (U.S. $555,333.89)**, or such other amounts as may be reflected from time to time on the books and records of Lender as evidencing the aggregate unpaid principal balance of loan advances made to Borrower.

**INTEREST RATE.** Advances under this Note shall bear interest from the date hereof until paid at the LIBOR Rate plus nine percent (9%). LIBOR Rate is the fluctuating rate of interest (rounded upwards, if necessary to the nearest 1/100 of 1%) equal to the 30 day LIBOR as published in the Money Rates section of the Wall Street Journal.

**PAYMENT OF INTEREST AND PRINCIPAL.** All accrued and unpaid interest shall be payable at the maturity of the Note. Borrower shall pay the balance of all outstanding principal and accrued but unpaid interest on the earlier to occur of:

    (i)       any sale or transfer of the Property to a third party;

    (ii)     twelve (12) months from the Note Effective Date.

All payments shall be made to Lender at 1221 McKinney St., Suite 2650 Houston, Texas 77010, or at such other address as required by Lender.

**PREPAYMENT.** Borrower may prepay this Note at any time.

**LENDER'S RIGHTS UPON DEFAULT.** Upon the occurrence of and during the continuation of any Event of Default, Lender shall have all of the rights and remedies provided in this Term Note and Deed of Trust.

**COLLATERAL.** This Note is secured inter alia, by the Deed of Trust.

**ATTORNEYS' FEES.** If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, Borrower agrees to pay Lender's reasonable attorneys' fees.

**DEFAULT RATE OF INTEREST.** Effective immediately upon the occurrence of an Event of Default, interest shall accrue at the Rates that are four percent (4.0%) per annum in excess of the rates otherwise payable under this Term Note.

**GOVERNING LAW.** Borrower agrees that this Note and the loan evidenced hereby shall be governed under the laws of the State of Arizona.

**WAIVERS.** Borrower waives presentment for payment, protest, notice of protest and notice of nonpayment. Borrower further agrees that discharge or release of any party who is or may be liable to

Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender. Borrower additionally agree that Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof. In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower further agrees that, should any event of default occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one event of default shall not be construed as a waiver or forbearance as to any other default. Borrower further agrees that any late charges provided for under this Note will not be charges for deferral of time for payment and will not and are not intended to compensate Lender for a grace or cure period, and no such deferral, grace or cure period has been or will be granted to Borrower in return for the imposition of any late charge. Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Note will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages. Failure to pay in full any installment or payment timely when due under this Note, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder.

SUCCESSORS AND ASSIGNS LIABLE. Borrower's obligations and agreements under this Note shall be binding upon Borrower's successors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

JURISDICTION AND VENUE. THE BORROWER HEREBY IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT AND AGREES THAT ANY ACTION OR PROCEEDING ARISING OUT OF OR BROUGHT TO ENFORCE THE PROVISIONS OF THIS NOTE OR THE COLLATERAL DOCUMENTS MAY BE BROUGHT IN THE BANKRUPTCY COURT.

CAPTION HEADINGS. Caption headings of the sections of this Note are for convenience purposes only and are not to be used to interpret or to define their provisions. In this Note, whenever the context so requires, the singular includes the plural and the plural also includes the singular.

SEVERABILITY. If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.

[SIGNATURE PAGE FOLLOW]

BORROWER:                                    U.S. American Stone and Minerals, Inc., a
                                             Nevada corporation


                                             By: _____
                                             Name: _____
                                             Title: _____

EXHIBIT 2

When recorded, return to:

Thomas E. Littler, Esq.
Warnicke & Littler, PLC
1411 North Third Street
Phoenix, Arizona 85004
_____

(Space above this line for Recorder's use)

## DEED OF TRUST AND ASSIGNMENT OF RENTS
## WITH SECURITY AGREEMENT
## (AND FINANCING STATEMENT--FIXTURE FILING)

THIS **DEED OF TRUST AND ASSIGNMENT OF RENTS WITH SECURITY AGREEMENT** ("Deed of Trust") is executed to be effective as of June 22, 2007, by **U.S. American Stone and Minerals, Inc.**, a Nevada corporation, whose address is 3839 Briargrove Lane, Ste. 6207, Dallas, TX 75287-6376, as trustor, assignor and debtor (the "Trustor"), to **[Lawyers Title of Arizona, Inc., an Arizona** corporation, whose address is 3131 E. Camelback Road, Ste. 220, Phoenix, Arizona 85016, as trustee (the "Trustee"), for the benefit of **Rock Bottom L.L.C.**, a Delaware limited liability company, whose address is 1221 McKinney St., Ste. 2650, Houston, TX 77010, as beneficiary, assignee and secured party (the "Beneficiary"). THIS DEED OF TRUST IS ENTERED INTO AS OF THE _____ _____ DAY OF NOVEMBER, 2009, PURSUANT TO THE FINANCING ORDER (AS DEFINED BELOW) TO BE EFFECTIVE AS OF JUNE 22, 2007 (THE "EFFECTIVE DATE"). References herein to "now" shall mean "as of the Effective Date" and references herein to "hereafter" mean "after the Effective Date".

### WITNESSETH:

1. <u>Grant and Conveyance</u>. Trustor irrevocably grants, conveys, transfers and assigns to Trustee, its successors and assigns, in trust, with power of sale and right of entry and possession, all of Trustor's right, title and interest now owned or hereafter acquired, in and to the following:

1.1 <u>Real Property</u>. Certain real property located in Yavapai County, Arizona, as more particularly described in Exhibit "A" attached and incorporated by this reference (the "Premises");

1.2 <u>Improvements and Fixtures</u>. All buildings and other improvements now or hereafter erected in the Premises including, without limitation, fixtures, attachments, appliances, equipment, machinery and other personal property attached to such buildings and other improvements, all of which shall be deemed and considered to be a part of the Premises;

1.3 <u>Appurtenances</u>. All appurtenances, hereditaments, servitudes, rights, easements rights-of-way, privileges, the reversion and reversions, the remainder and remainders, and all other advantages thereunto belonging or in any way appertaining to the Premises (all as part of the Premises hereby conveyed) which shall be deemed to include without limitation all leases, subleases, rental contracts and occupancy agreements which have been or which may hereafter be executed covering all or any part of the Premises, together with all rents and rentals, issues, profits, damages, royalties, revenue and any other income to Trustor from any business conducted by or on behalf or for the monetary benefit of Trustor at or from the Premises ("Property Income"), subject, however, to any license and authority herein given to and conferred upon Trustor to collect and apply such Property Income so long as Trustor is not in default hereunder;

1.4     <u>Water Rights</u>. All water, irrigation and drainage rights (whether riparian, appropriative or otherwise and whether or not appurtenant) and all electrical users' rights, in or hereafter relating to or used in connection with the Premises; all shares of stock evidencing any such rights; and all fixtures and equipment (whether or not annexed thereto) now or hereafter used for the production or distribution of water or electricity in connection with the use or occupancy of the Premises or for the drainage or supply thereof;

1.5     <u>Payments</u>. All judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking or threat of taking of all or any part of the Premises under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Premises or any part thereof, or to any rights appurtenant thereto; together with all accounts receivable and other rights to the payment of money, general intangibles, promotional material, market studies, tenant data, and business records arising from or relating to the Premises and the renting, letting or operating thereof, together with all damages, royalties and revenue of every kind, nature and description whatsoever that the Trustor may be entitled to receive from any person or entity whether relating to oil, gas, minerals or otherwise, with the right in the Beneficiary to receive and receipt therefor and apply the same to the indebtedness secured hereby either before or after any default hereunder, but without obligation so to do; and

1.6     <u>Miscellaneous</u>. To the extent the following have been physically delivered to Trustor and the same are assignable or transferable, all soil reports, engineering plans, site plans, surveys, plans and specifications for the Improvements constructed upon the Premises and all architectural contracts related to such Improvements, and all other contracts, rights, licenses, permits and approvals related to the Improvements, management contracts or agreements, franchise agreements, authorities or certificates required or used in connection with the ownership, construction, operation or maintenance of the Premises which the Trustor may now have or acquire hereafter.

1.7     <u>Mineral Property or Properties</u>. (a) the fee lands, unpatented and patented mining claims, mining leases and other mineral interests described in Exhibit "A" attached hereto (b) any other interest in, to or relating to (i) all or any part of the land described either in Exhibit "A" or in the documents described in Exhibit "A" or (ii) any of the estates, property rights or other interests referred to above, and (c) any instrument executed in amendment, correction, modification, confirmation, renewal or extension of the same.

2.  Additional Security.

2.1  Assignment of Rents. Subject to the provisions of paragraph 2.2 below, Trustor absolutely and unconditionally assigns and transfers to Beneficiary all the Property Income, whether now due, past due or to become due, and hereby gives to and confers upon Beneficiary the rights, power and authority to collect such Property Income. Subject to the provisions of paragraph 2.2 below, Trustor irrevocably appoints Beneficiary as Trustor's true and lawful attorney, at the option of Beneficiary at any time, to demand, receive and enforce payment, to give receipts, releases, and satisfactions, and to sue, either in the name of Trustor or in the name of Beneficiary, for all such Property Income and apply the same to the indebtedness secured hereby. It is understood and agreed that neither the foregoing assignment of Property Income to Beneficiary nor the exercise by Beneficiary of any of its rights or remedies under this paragraph 2.1 or under paragraphs 6.5 or 2.2 hereof shall be deemed to make Beneficiary a "mortgagee-in-possession" or a "beneficiary-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Beneficiary, in person or by agent, assumes actual possession thereof, nor shall appointment of a Receiver for the Property by any court at the request of Beneficiary or by agreement with Trustor or the entering into possession of the Property or any part thereof by such receiver be deemed to make Beneficiary a "mortgagee-in-possession" or a "beneficiary-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof. Beneficiary shall expressly have all rights provided for in A.R.S. § 33-702(B) and 33-807 or such similar provisions as may be enacted hereafter.

2.2  License For Collection of Rents. Notwithstanding anything to the contrary contained herein or in the Contract secured hereby, so long as no default by Trustor in the payment of any indebtedness secured hereby or in the performance of any obligation, covenant or agreement contained in this Deed of Trust, the Financing Order or the DIP Loan Documents, shall exist and be continuing, Trustor shall have the license and authority to collect all Property Income and to retain, use and enjoy the same.

2.3  Insurance Policy. Trustor, as debtor, hereby grants to Beneficiary, as secured party, a security interest in, and lien on, all insurance policies required to be maintained by Trustor hereunder, including, without limitation, all liability and fire and extended coverage policies required by paragraph 5.4, together with all general intangibles, contract rights and accounts arising therefrom and all proceeds, additions, accessions and substitutions thereto or therefor. Trustor, as debtor, further hereby grants to Beneficiary, as secured party, a security interest in, and lien on, all proceeds of any judgment, award or settlement in any condemnation or eminent domain proceeding, or in settlement or in lieu thereof, together with all general intangibles, contract rights and accounts arising therefrom.

2.4  Fixture Filing. Upon recording in the records of Yavapai County, Arizona, this Deed of Trust shall also constitute a financing statement and a fixture filing.

3.  [Intentionally omitted].

4.  Obligations Secured. Trustor has the right and is duly authorized to encumber the Property, and this Deed of Trust is executed and delivered for the purpose of securing:

4.1  Financing Order. Payment, performance and discharge of all covenants and obligations of Trustor under that certain Order entered by the United States Bankruptcy Court for the District of Arizona on June 22, 2007 in the case of In re American Stone and Minerals, Inc., case no. 2:07-bk-01628-GBN (the "Bankruptcy Case")(plus any future amendments thereto) (the "Financing Order"); and

4.2  **DIP Loan Documents.** Payment, performance and discharge of all covenants, obligations and agreements of Trustor pursuant to this Deed of Trust, the Term Note from Trustor to Beneficiary and any other agreements relating thereto,

5.  **Trustor's Agreements.** Trustor covenants and agrees as follows:

5.1  **Payments.** To pay and discharge promptly when due:

5.1.1  **Debt.** All indebtedness and obligations evidenced by, set forth in, and secured by this Deed of Trust, the Financing Order and the DIP Loan Documents;

5.1.2  **Taxes.** All taxes, assessments anea other governmental or public charges against or affecting the Property, and any accrued intrest, costs and penalties thereon. Turstor agrees to submit receipts thereforto Beneficiary at least 10 days before delinquency, provided that Trustee may contest the amount or validity of such charges and taxes by appropriate proceedings provided by law including payment under protest, but upon final determination of any such proceeding, Trustor promptly shall pay any sums found to be due thereon, and provided, further, that prior to any such contest, Trustor shall furnish Beneficiary a cash deposit or other security in an amount and form reasonably satisfactory to Beneficiary to indemnify Beneficiary against sale or forefeiture of the property, which deposit or other security shall be returned to Turstor upon final payment by Trustor of such charge or tqax, or upon final resolution of such contest in favor of Trustor resulting in no imposition or lien against the Property.

5.1.3  **Utilities.** All charges for utilities or services to the Premises including but not limited to electricity, gas, sewer, and water which are incurred after the date of this Deed of Trust; and,

5.1.4  **Costs.** All costs, fees and expenses of this Deed of Trust which Beneficiary may incur upon or after any Event of Default exists and remains uncured after any notice and cure period, including cost of evidence of title, Trustee's fees and all reoansable attorneys' fees in connection with the sale, foreclosure or other enforcement hereunder, whether completed or not, which amounts shall become due upon demand on Trustee.

5.2  [Intentionally Omitted].

5.3  [Intentionally Omitted].

5.4  [Intentionally Omitted]

5.5  **Condemnation.** Should the Property, or any part thereof, be taken or damaged by reason of any public improvement, eminent domain or condemnation proceeding, or the threat thereof, or in any other compensable manner, Beneficiary shall be entitled to all compensation, awards, settlements and other payments or relief therefor and shall be entitled, at Beneficiary's option to commence, appear in and prosecute or negotiate in Beneficiary's own name any action or proceeding or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action and proceeds (the "Proceeds") are hereby assigned to Beneficiary, who shall (after deducting therefrom any of Beneficiary's necessary and reasonable expenses, including attorneys' fees) apply or release the Proceeds with the same effect and as provided in paragraph 5.3 above with respect to disposition of insurance proceeds as to application of proceeds (i) in the case there exists any uncured Event of Default, (ii) there has been a total taking of the Improvements, or (iii) there has been a partial taking of the Improvements; provided, that, if Beneficiary has elected to allow the Proceeds to be utilized for restoration of the Property and there are any remaining Proceeds after application to the

restoration of the Property and full payment of the same, Beneficiary shall be entitled to apply such excess to the payment of any interest or principal balance due under this Deed of Trust, the Financing Order or the DIP Loan Documents. Trustor agrees to execute such further assignments of the Proceeds as Beneficiary or Trustee may reasonably require. Nothing contained herein shall prevent the accrual of interest as provided in this Deed of Trust, the Financing Order or the DIP Loan Documents on any portion of the principal balance due under this Deed of Trust, the Financing Order or the DIP Loan Documents until such Proceeds are actually received and applied by Beneficiary.

   5.6  [Intentionally Omitted].

   5.7  <u>Further Acts</u>. If reasonably required by Beneficiary, at any time during the term of this Deed of Trust, Trustor will execute and deliver to Beneficiary, in form satisfactory to Beneficiary, continuations of financing statements and supplemental deeds of trust, assignments of rents or security agreements.

   5.8  <u>Attorneys' Fees</u>. If Lender refers the Note of this Deed of Trust to an attorney for collection, or files suit against Borrower to collect this Note, Borrower agrees to pay Lender's reasonable attorneys' fees.

   5.9  [Intentionally Omitted].

   5.10  [Intentionally Omitted].

   5.11  [Intentionally omitted].

   5.12  [Intentionally Omitted].

   5.13  <u>Inspection of Property</u>. Beneficiary, its agents, employees or workmen are authorized to enter at any reasonable time upon any part of the Property for the purpose of inspecting the same and for the purpose of performing any of the acts Beneficiary is authorized to perform under the terms of this Deed of Trust, the Financing Order or any of the DIP Loan Documents.

   5.14  [Intentionally Omitted].

  6.  <u>Default and Remedies</u>.

   6.1  <u>Events of Default</u>. Each of the following events shall constitute an Event of Default:

     6.1.1  <u>Nonpayment</u>. Trustor fails to pay when due any monies payable hereunder, the Financing Order or any of the DIP Loan Documents; or

     6.1.2  <u>Breach of Provision</u>. Trustor breaches or in any way fails to perform or comply with any other covenant or provision hereof, or any covenant or provision in the DIP Credit Agreement or the DIP Loan Documents.

   6.2  <u>Beneficiary's Remedies</u>. If any Event of Default shall occur, Beneficiary may declare all sums secured hereby immediately due and payable and may commence an action to foreclose this Deed of Trust as if it were a mortgage, or proceed by power of sale by delivery to Trustee of a written statement of breach and demand for sale and election to cause the Property to be sold by power of sale. Should Beneficiary elect to foreclose by exercise of the power of sale herein, Beneficiary shall also deposit with Trustee copies of this Deed of Trust, the Financing Order and any other necessary DIP Loan

5

Documents and such receipts and reasonable evidence of expenditures made and secured hereby as Trustee may require, and notice of Trustee's sale having been given as then required by law (the "Notice of Sale") and after lapse of such time as may then be required by law after recordation of the Notice of Sale, Trustee, without further demand on Trustor, shall sell the Property at the time and place of sale fixed by Trustee in the Notice of Sale, either as a whole or in separate parcels, and in such order as Trustee may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale or upon authorized credit bid by Beneficiary. Trustee may postpone the sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone or relocate such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser Trustee's deed conveying the Property so sold but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof in favor of purchasers or encumbrancers for value and without notice. Any person, including Trustor, Trustee or Beneficiary, may purchase at such sale. With respect to any personal property included in the Property, Beneficiary may proceed as to both the real and personal property in accordance with Beneficiary's rights and remedies in respect of the real property or sell the personal property separately and without regard to the real property in accordance with Beneficiary's rights and remedies as provided by law.

      6.3    <u>Discontinuance of Proceedings</u>. Beneficiary, from time to time before the Trustee's sale pursuant to paragraph 6.2, may rescind any statement of breach or default and election to cause the Property to be sold by executing and delivering to Trustee a written notice of such rescission and Beneficiary may also cause Trustee to execute a notice of cancellation of Trustee's sale, which notice, when duly recorded, shall also constitute a cancellation of any prior statement of breach and demand for sale. The exercise by Beneficiary of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Beneficiary to execute and deliver to Trustee, as above provided, other statements of breach and demand for sale and of election to cause the Property to be sold to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of this Deed of Trust, the Financing Order, the DIP Loan Documents, or any of the rights, obligations or remedies of the Beneficiary hereunder.

      6.4    <u>Application of Proceeds of Sale</u>. Upon a sale of all or part of the Property pursuant to paragraph 6.2, after deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale and Trustee's reasonable attorneys' fees, Trustee shall apply the proceeds of sale to payment of: (i) all sums expended under the terms hereof, not then repaid, with accrued interest at any rate of interest under this Deed of Trust or the Term Note; (ii) all other sums then secured hereby; and (iii) the remainder, if any, to the person or persons legally entitled thereto.

      6.5    <u>Beneficiary Statement</u>. Trustee, upon presentation to it of a statement of breach signed by or on behalf of Beneficiary, setting forth any fact or facts showing a default by Trustor under any of the terms or conditions of this Deed of Trust, is authorized to accept as true and conclusive all facts and statements in such affidavit and to act hereunder in complete reliance thereon.

      6.6    <u>Other Remedies Upon Default</u>. Trustor covenants and agrees that should Trustor fail or refuse to make any payment or do any act which Trustor is obligated hereunder to make or do, at the time and in the manner herein provided, then Beneficiary, or Trustee upon written instructions from Beneficiary may, without notice to or demand upon Trustor, without releasing Trustor from any obligation hereunder and without waiving its right to declare a default as herein provided or impairing any statement of breach or election to cause the Property to be sold or any sale proceeding predicated thereon, and in addition thereto and to any and all other remedies reserved herein to Beneficiary or under law or in equity:

6

6.6.1 [Intentionally Omitted].

6.6.2  Appear in Proceedings.  Commence, appear in or defend any action or proceedings purporting to affect the security hereof, or any additional or other security therefor, or the interest, rights, powers and duties of Trustee and Beneficiary hereunder whether brought by or against Trustor, Trustee or Beneficiary;

6.6.3  Pay Encumbrances.  Pay, purchase, contest or compromise any claim, debt, lien, charge or encumbrance which in the good faith judgment of either may affect or appear to affect the security of this Deed of Trust, the interest of Beneficiary or the rights, powers and duties of Trustee or Beneficiary hereunder with any sums expended for such purposes to become part of the indebtedness secured hereby; and

6.7  [Intentionally Omitted].

6.8  [Intentionally Omitted].

6.9  No Waiver of Strict Performance:  Trustor covenants and agrees that the acceptance by Beneficiary of any sum secured hereby after its due date, or in an amount less than the sum then due, shall not constitute a waiver by Beneficiary of Beneficiary's rights either to require prompt payment when due of all other sums so secured or to declare a default or exercise such other rights as herein provided for failure so to pay.  No failure by Beneficiary to insist upon strict performance of any term, covenant or condition hereof or failure to exercise any right or remedy hereunder shall constitute a waiver of any such breach of such term, covenant or condition or of the later exercise of such right or remedy.

6.10  Remedies Cumulative.  All rights and remedies of Beneficiary provided herein shall be in addition to all other rights and remedies provided by the Financing Order or the DIP Loan Documents and by law and all rights and remedies shall be cumulative and not exclusive.  In the event of the occurrence of any default hereunder or under any of the Financing Order or the DIP Loan Documents, Beneficiary may exercise any one or more of Beneficiary's rights or remedies whether provided herein, in any of the Financing Order or the DIP Loan Documents or by law, either concurrently or independently and in such order as Beneficiary may determine, and may apply the assets or proceeds as Beneficiary may determine without affecting the status of or waiving any right against all or any other security and without waiving any breach or default or any right or power, whether exercised hereunder or contained herein or in any of the Financing Order or the DIP Loan Documents.  Trustor waives any right or privilege which Trustor or its creditors otherwise may have to require Beneficiary to proceed against the assets of Trustor in any particular order or fashion under any legal or equitable doctrine or principle of marshalling of assets, exhaustion of security, suretyship or otherwise, and further agrees that upon default and after the expiration of any applicable grace period following notice, Beneficiary may proceed to exercise any one or more remedies with regard to any or all assets encumbered or affected by this Deed of Trust, the Financing Order or the DIP Loan Documents in such manner and order as Beneficiary in its sole discretion may determine.

6.11  Deficiency Judgment.  Beneficiary may maintain an action for a deficiency judgment for any balance due hereunder and under the Financing Order or the DIP Loan Documents, if and to the extent permitted by the terms of these documents.

6.12  Possession After Trustee's Sale.  The purchaser at any Trustee's Sale referred to herein shall be entitled to immediate possession of the Property as against the Trustor, Trustor's successors in interest and any person or persons claiming by, through or under Trustor, and any person in possession shall be deemed to be a tenant at sufferance of the purchaser and shall be guilty of forcible

7

detainer, and the purchaser shall have the right to the benefit of summary proceedings provided by law for forcible detainer, ejectment, or any other proceedings to obtain possession as provided by law, together with all costs and expenses and reasonable attorneys' fees incurred in enforcing its right of possession.

6.13    Effect of Foreclosure on Existing Leases.  Upon any such sale, any lease of the Property or a portion thereof or any sublease thereof shall remain in effect, the purchaser thereby being subrogated to Trustor's interest therein, unless the purchaser is entitled to and elects to treat such lease as terminated by virtue of the sale under Beneficiary's prior lien or charge, upon written notice of such election to terminate on any tenants and sub-tenants.

7.    General Provisions.

7.1    Suits to Protect Property.  Subject to any liabilities imposed on Beneficiary at law or by contract, Trustor covenants and agrees to appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust, or any additional or other security for the obligations secured hereby, the interest of Beneficiary or the rights, powers or duties of Trustee hereunder; and to pay all costs and expenses, including cost of evidence of title and attorneys' fees in a reasonable sum, in any action or proceeding in which Beneficiary or Trustee may appear or be made a party, including, but not limited to, foreclosure or other proceeding commenced by those claiming a right to any part of the Property under prior or junior liens, any action to partition or condemn all or part of the Property, whether or not pursued to final judgment, and in any exercise of any power of sale, whether or not the sale is actually consummated.  If any prior or junior mortgage, deed of trust, certificate of purchase or other lien or encumbrance shall be in default by reason of nonpayment by Trustor of principal or interest, or any part thereof, or for any other reason, Beneficiary may cure such default without notice and the cost of curing such default with interest at the default rate set forth in the Term Note from the time of the advance or advances therefor shall be added to the indebtedness secured hereby and may be collected from Trustor upon demand at any time after the time of such advance or advances, and the holder of the Note and this Deed of Trust shall be subrogated to the rights of the lienholders so paid.  Trustor shall immediately upon receiving any knowledge or notice of any default under any mortgage, deed of trust, lease, sublease, certificate of purchase or other lien or encumbrance, give written notice thereof to Beneficiary and shall give to Beneficiary immediately upon receipt thereof, a true copy of each and every notice, summons, legal process, legal paper or other communication relating in any way to any such lien or encumbrance or to the performance or enforcement thereof, or to any default thereunder.

7.2    Recordation.  Trustee accepts this Trust when this Deed of Trust, executed and acknowledged, is made a public record as provided by law.

7.3    Substitution of Trustee.  Beneficiary may, from time to time, by a written instrument executed and acknowledged by Beneficiary and recorded in the county where the Property is located, and by otherwise complying with appropriate statutory provisions, substitute a successor or successors for the Trustee named herein or acting hereunder.

7.4    Notices.

7.4.1   Addresses.  All notices hereunder shall be deemed to have been duly given if hand delivered or mailed, postage prepaid, by registered or certified mail, return receipt requested, to the parties at the addresses set forth above in this Deed of Trust (or at such other addresses as shall be given in writing by any party to the others).  Notice shall be deemed received when delivered or three days after deposit in the mail, properly addressed, postage prepaid.

7.4.2   Notices of Default and Sale.  Trustor requests that a copy of any notice of default and of any Notice of Sale hereunder be mailed to Trustor at the address set forth above.

8

7.4.3 <u>Actions Involving Parties</u>. Unless otherwise provided by applicable law, Trustee shall be under no obligation to notify any party hereto of any action or proceeding of any kind in which Trustor, Beneficiary or Trustee shall be a party, unless brought by Trustee, or of any pending sale under any other deed of trust.

7.5 <u>Application</u>. This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, personal representatives, successors and assigns. The term "Beneficiary" shall mean the owner and holder, including pledges and assignees, of the Financing Order or the DIP Loan Documents, whether or not named as Beneficiary herein. "Trustor" shall refer to the entity signing this Deed of Trust as such, and its successors and assigns as provided above. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

7.6 <u>Severability</u>. If any provision of this Deed of Trust should be held unenforceable, invalid or void, then such provision shall be deemed severable from the remaining provisions, which shall continue in full force and effect and this Deed of Trust shall not be deemed impaired or unenforceable.

7.7 <u>Applicable Law</u>. This Deed of Trust shall be governed by and construed and enforced in accordance with the laws of the State of Arizona, including its conflicts or choice of law principles.

7.8 <u>Captions</u>. All captions are inserted only as a matter of convenience and for reference, and in no way define, limit, or describe the scope or intent of this Deed of Trust, nor in any way affect the construction or interpretation of this Deed of Trust.

7.9 <u>Construction</u>. This Deed of Trust is the result of negotiations between the parties, neither of whom has acted under any duress or compulsion, whether legal, economic or otherwise. Accordingly, the terms and provisions of this Deed of Trust shall be construed in accordance with their usual and customary meanings. Beneficiary and Trustor waive the application of any rule of law that otherwise would be applicable in connection with the construction of this Deed of Trust that ambiguous or conflicting terms or provisions should be construed against the party who (or whose attorney) prepared the executed Deed of Trust or any earlier draft of the same.

7.10 <u>No Third Party Beneficiary</u>. No term or provision of this Deed of Trust is intended to be, nor shall any such term or provision be construed to be, for the benefit of any person, firm, corporation or other entity not a party hereto. No such other person, firm, corporation or entity shall have any right or cause of action hereunder.

7.11 <u>Irrevocable Trust</u>. The Trust created hereby is irrevocable by Trustor unless and until the Property is reconveyed to Trustor as provided in paragraph 7.12 hereof.

7.12 <u>Reconveyance</u>. Upon written request of Beneficiary stating that all sums secured hereby have been paid and upon surrender to Trustee of this Deed of Trust cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.13 <u>Security Intended</u>. Notwithstanding any provision hereof to the contrary, the parties intend that this instrument constitute security for the payment of the indebtedness and performance

of the obligations of Trustor as provided elsewhere herein, and shall be a "deed of trust" as defined in A.R.S. § 33-801. If despite that intention a court of competent jurisdiction shall determine that this instrument does not qualify as a "trust deed" or "deed of trust" within the meaning and purview of Chapter 6.1, Title 33, Arizona Revised Statutes, then <u>ab initio</u>, this instrument shall be deemed a realty mortgage under A.R.S. § 33-702, and shall be enforceable as such, the Trustor shall be deemed a "mortgagor," the Beneficiary shall be deemed a "mortgagee," the Trustee shall have no capacity but shall be disregarded and all references to the "Trustee" herein shall be deemed to refer to the "mortgagee" to the extent not inconsistent with interpreting this instrument as though it were a realty mortgage. As a realty mortgage, Trustor as mortgagor shall be deemed to have conveyed the Premises <u>ab initio</u> to the Beneficiary as mortgagee, such conveyance as a security to be void upon condition that Trustor pay all indebtedness and perform all its obligations secured hereby.

   7.14 <u>Due on Sale or Encumbrance</u>. Trustor expressly agrees that if any part or interest in the Property be voluntarily or involuntarily sold, conveyed, transferred, exchanged, or is disposed of, or is further encumbered, or a contract of sale or other conveyance is consummated with respect thereto, then Beneficiary, at Beneficiary's option, may accelerate the sums due under the Contract and require the payment of the then-existing outstanding principal balance and all of the sums due under the Contract and the Contract Documents.

   7.15 [Intentionally Omitted].

   7.16 <u>Trustee</u>. Trustee holds title under this Deed of Trust for the benefit of Beneficiary in accordance with the provisions of A.R.S. § 33-801, <u>et seq</u>. Trustee acts and will act in a representative capacity only under the provisions of this Deed of Trust and of such statutes.

   7.17 <u>Time of Essence</u>. Time is of the essence of this Deed of Trust. Notwithstanding the foregoing, if this Agreement requires any act to be done or action to be taken on a date that falls on a Saturday, Sunday or legal holiday, such act or action shall be deemed to have been validly done or taken if done or taken on the next succeeding day that is not a Saturday, Sunday or legal holiday.

10

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust and Assignment of Rents with Security Agreement as of the date first written above.

<u>TRUSTOR:</u>

U.S. AMERICAN STONE AND MINERALS, INC., a Nevada corporation

By:_____
Print Name: _____
Its: _____

STATE OF ARIZONA     )
                  ) ss
COUNTY OF _____ )

On this _____ day of _____, A.D. 2009, before me, the undersigned officer, personally appeared _____ who acknowledged to be the _____ respectively, of U.S. AMERICAN STONE AND MINERALS, INC., a Nevada Corporation, and that as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the Company by (himself) (themselves) as such authorized signor.

IN WITNESS THEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires:

Exhibit A

PARCEL I:

The surface to a depth of 40 feet of the Congress Lode Mining Claim, Mineral Survey No. 878, located in the Martinez Mining District, in Sections 14 and 23, Township 10 North, Range 6 West of the Gila and Salt River Base and Meridian, Yavapai County, Arizona, patent whereof is recorded in Book 30 of Deeds, Page 476, records of Yavapai County, Arizona.

EXCEPT the following described parcels:

a) BEGINNING at the Collar of the No. 2 Shaft on the Congress Vein, which is South 60 Degrees, 57 Minutes, 38 Seconds East, 2287.40 feet from U.S. Mineral Monument No. 1;

Thence from No. 2 Shaft, East 50.00 feet to Corner 1;

Thence from Corner 1, South 45.00 feet to Corner 2;

Thence from Corner 2, West 100.00 feet to Corner 3;

Thence from Corner 3, North 45.00 feet to Corner 4;

Thence from Corner 4, East 50.00 feet to Shaft No. 2 and the POINT OF BEGINNING; and

b) BEGINNING at a point on the South edge of an Old Stamp Mill Site, designated as strake S. 21, which is South 55 Degrees, 21 Minutes, 52 Seconds East, 2540.02 feet from U.S. Mineral Monument No. 1 and which is South 15 Degrees, 05 Minutes, 18 Seconds East, 345.23 feet from the portal of No. 2 Congress Shaft;

Thence from S. 21, North 75 Degrees, 00 Minutes, 00 Seconds West, 50.00 feet to Corner 1;

Thence from Corner 1, North 15 Degrees, 00 Minutes, 00 Seconds East, 50.00 feet to Corner 2;

Thence from Corner 2, South 75 Degrees, 00 Minutes, 00 Seconds East, 100.00 feet to Corner 3;

Thence from Corner 3, South 15 Degrees, 00 Minutes, 00 Seconds West, 50.00 feet to Corner 4;

Thence from Corner 4, North 75 Degrees, 00 Minutes, 00 Seconds West, 50.00 feet to S. 21 and the POINT OF BEGINNING.

## PARCEL II:

The surface to a depth of 40 feet of the Queen of the Hills Lode Mining Claim, Mineral Survey No. 879, located in the Martinez Mining District, in Section 14, Township 10 North, Range 6 West of the Gila and Salt River Base and Meridian, Yavapai County, Arizona, patent whereof is recorded in Book 30 of Deeds, Page 480, records of Yavapai County, Arizona.

## PARCEL III:

The surface to a depth of 40 feet of the Mosouri Lode Mining Claim, Mineral Survey No. 881, located in the Martinez Mining District, in Sections 14 and 23, Township 10 North, Range 6 West of the Gila and Salt River Base and Meridian, Yavapai County, Arizona, patent whereof is recorded in Book 30 of Deeds, Page 488, records of Yavapai County, Arizona.

## PARCEL IV:

The surface to a depth of 40 feet of the Fraction or Fractional Lode Mining Claim, Mineral Survey No. 883, located in the Martinez Mining District, in Sections 14 and 23, Township 10 North, Range 6 West of the Gila and Salt River Base and Meridian, Yavapai County, Arizona, patent whereof is recorded in Book 30 of Deeds, Page 497, records of Yavapai County, Arizona.

EXCEPT the following described parcels:

a) BEGINNING at a point on the South edge of an Old Stamp Mill Site, designated as strake S. 21, which is South 55 Degrees, 21 Minutes, 52 Seconds East, 2540.02 feet from U.S. Mineral Monument No. 1 and which is South 15 Degrees, 05 Minutes, 18 Seconds East, 345.23 feet from the portal of No. 2 Congress Shaft;

Thence from S. 21, North 75 Degrees, 00 Minutes, 00 Seconds West, 50.00 feet to Corner 1;

Thence from Corner 1, North 15 Degrees, 00 Minutes, 00 Seconds East, 50.00 feet to Corner 2;

Thence from Corner 2, South 75 Degrees, 00 Minutes, 00 Seconds East, 100.00 feet to Corner 3;

Thence from Corner 3, South 15 Degrees, 00 Minutes, 00 Seconds West, 50.00 feet to Corner 4;

Thence from Corner 4, North 75 Degrees, 00 Minutes, 00 Seconds West, 50.00 feet to S. 21 and the POINT OF BEGINNING; and

b) BEGINNING at a point on the footwall of the No. 5 Niagara Shaft, designated as Stake S. 22, which is South 56 Degrees, 06 Minutes, 40 Seconds East, 3411.28 feet from U.S. Mineral Monument No. 1;

Thence from S. 22, South 50.00 feet to Corner 1;

Thence from Corner 1, West 50.00 feet to Corner 2;

Thence from Corner 2, North 130.00 feet to Corner 3;

Thence from Corner 3, East 100.00 feet to Corner 4;

Thence from Corner 4, South 130.00 feet to Corner 5;

Thence from Corner 5, West 50.00 feet to Corner 1 and the POINT OF BEGINNING.

PARCEL V:

BEGINNING at the Southwest corner of Section 14, T10N, R6W, North 00 Degrees, 05 Minutes, 38 Seconds West a distance of 1125.02 feet to the true point of beginning;

Thence North 00°, 05 minutes, 38 seconds West 861.55 feet to the West 1/64 corner of the Northwest quarter of the Southwest quarter, also known as the N S 1/64 corner;

Thence South 89°, 53 minutes, 27 seconds East, a distance of 1323.12 feet to the East 1/64 corner of said Northwest quarter of the Southwest quarter (NW/4SW/4), also known as the SW SW 1/64 corner;

Thence South 00°, 01 minutes, 03 seconds East a distance of 661.55 feet to the center of 1/16 corner of the Southwest quarter, also known as SW 1/16 corner;

Thence North 89°, 55 minutes, 06 seconds West, a distance of 73.95 feet to the Northeast side line, Line 5-6 of Why Not Lode, Mineral Survey No. 882;

Thence North 44°, 42 minutes, 10 seconds West, a distance of 309.46 feet to corner No. 5;

Thence South 43°, 50 minutes, 20 seconds West, a distance of 600.00 feet to corner No. 3 of said Why Not Lode;

Thence Westerly to the True Point of Beginning.

Except all coal, oil, gas and other minerals as reserved from said land.

## PARCEL VI:

An easement for ingress, egress and public utilities, being 20.00 feet in width and measured perpendicular to the South line and parallel with the West line of Section 14 that lies in the Golden Thread Mining Claim, Mineral Survey No. 1352, located in the Martinez Mining District, in Section 14, Township 10 North, Range 6 West of the Gila and Salt River Base and Meridian, Yavapai County, Arizona, patent whereof is recorded in Book 54 of Deeds, Page 104, records of Yavapai County, Arizona.

## PARCEL VII:

An easement for ingress, egress and public utilities along the Westerly 20.00 feet of Lot 7, Section 14, Township 10 North, Range 6 West, extending from its terminus on the Northwest end line of the Golden Thread Mining Claim, Mineral Survey No. 1352, located in the Martinez Mining District, in Section 14, Township 10 North, Range 6 West of the Gila and Salt River Base and Meridian, Yavapai County, Arizona, patent whereof is recorded in Book 54 of Deeds, Page 104, records of Yavapai County, Arizona, to its terminus on the South line of Parcel V.